J-S33028-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JESSIE J. CRAWLEY | : | |
| | : | |
| Appellant | : | No. 1340 WDA 2022 |

Appeal from the PCRA Order Entered October 12, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0012842-2015

BEFORE: BENDER, P.J.E., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.: **FILED: December 22, 2023**

Jessie J. Crawley (Appellant) appeals from the order entered in the Allegheny County Court of Common Pleas denying his second petition filed pursuant to the Post Conviction Relief Act (PCRA).[1] Appellant seeks relief from the judgment of sentence of an aggregate term of 235 to 470 months' imprisonment imposed following his jury conviction of corrupt organizations[2] and related charges resulting from his participation in a state-wide organization that fabricated prescriptions to obtain and resell Oxycodone. On appeal, Appellant contends the PCRA court erred in denying his claim that the

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9545.

[2] *See* 18 Pa.C.S.§ 911(b)(3)-(4).

Commonwealth[3] committed a ***Brady***[4] violation by falsely informing the jury that a material witness agreed to a 10-to-20-year sentence in exchange for his cooperation, when no agreement had been reached and the sentence the witness received was significantly less. Because we conclude no ***Brady*** violation occurred, we affirm.

The facts underlying Appellant's convictions were summarized by a prior panel of this Court as follows:

> Kevin Andrews led a state-wide organization that fabricated prescriptions to obtain Oxycodone, and employed people — often women who were addicted to Oxycodone or heroin — to fill the prescriptions at pharmacies. Thereafter, Andrews illegally sold the Oxycodone pills.[2] Following an investigation, the Pennsylvania Attorney General's Office (AG Office) determined that at least 500 fraudulent prescriptions were filled.
>
> ———————
>
> [2] In January of 2015, 24 people associated with the organization were arrested, and Andrews was arrested in April of 2015 and charged in Blair County. His paramour at that time, Kristen Berry, testified at trial in this case that Andrews was sentenced to 33 to 66 years' imprisonment.
>
> ———————
>
> The Commonwealth alleged that Appellant, who was Andrews' cousin, was a local leader in the organization, and that he prepared fraudulent Oxycodone prescriptions, instructed individuals on how to fill them at pharmacies, transported individuals to the pharmacies, paid them with cash and Oxycodone pills, and subsequently ingested some of the pills himself or sold the pills. The Commonwealth averred that Appellant was responsible for obtaining more than 15,000 pills over the course

———————

[3] At all relevant times in this case, the Commonwealth's interests were represented by the Pennsylvania Office of Attorney General.

[4] ***Brady v. Maryland***, 373 U.S. 83 (1963).

of a year. An investigative grand jury recommended that charges be filed against Appellant, as well as his associates Tracy Markin, Erica Leggett, and Marsha Johnston. Appellant was thus charged with three counts of acquisition of a controlled substance through fraud, two counts of corrupt organizations, and one count each of conspiracy, forgery, identity theft, dealing in proceeds of unlawful activities, criminal use of a communication facility, and possession with intent to deliver a controlled substance.[5]

The case proceeded to a jury trial on February 17, 2017. The Commonwealth presented ten witnesses: Berry (Andrews' former paramour); Markin and Leggett; AG Office Narcotics Agent Courtney Van Orden, who investigated this case; Kayla Lantzy, another paramour of Appellant, who also participated in the enterprise; Lantzy's aunt, who was a nurse and procured, at Appellant's request, two doctors' "DEA numbers" that were subsequently used for fraudulent prescriptions; three women who filled fraudulent prescriptions at Appellant's instruction and were subsequently paid by him; and [Raheem Hall,] a "driver" who worked for Andrews and observed Appellant create the prescriptions.[4]

_____

[4] All of these witnesses — except the AG's narcotics agent — were also charged for their roles in the organization.

**Commonwealth v. Crawley**, 350 WDA 2018 (unpub. memo. at 1-3) (Pa. Super. Sep. 6, 2018) (record citations & some footnotes omitted), *appeal denied*, 372 WAL 2018 (Pa. Feb. 26, 2019).

Relevant to the issue before us, Commonwealth witness Hall testified that although he was charged in Blair County for his participation in the fraudulent prescription scheme, no promises had been made to him in

_____

[5] **See** 35 P.S. § 780-113(a)(12); 18 Pa.C.S. §§ 903(a)(1), 4101(a)(3), 4120(a), 5111(a)(1), 7512(a); and 35 P.S. § 780-113(a)(30), respectively.

exchange for his cooperation.[6]  **See** N.T., 2/17/17, at 55.  He acknowledged, however, that his attorney advised him he would be sentenced to "under 10 years."  **Id.**  Upon cross-examination, Appellant's counsel confronted Hall with a letter indicating the Commonwealth "recommended 10 to 20 years" for the Blair County charges in exchange for his "continued cooperation[.]"  **Id.** at 61.  Hall responded, "I never seen that or heard that until right now."  **Id.**  He insisted that his attorney never told him about that recommendation.  **Id.** at 62.  However, Hall conceded that, based upon the sentencing guidelines, his attorney told him he would face a sentence of 40 to 80 years' imprisonment if he was convicted of the charges in the prescription fraud scheme.  **See id.** at 64-65.

During its closing, the Commonwealth argued to the jury:

> Mr. Hall is going to get 10 to 20 years for his case.  If you think that's a great benefit, here is the thing I don't understand.  That 10 to 20 years, he didn't really do anything.  He said he only saw [Appellant] twice.  Never spoke to him. . . .

N.T., 2/21/17, at 185.  Thereafter, the trial court instructed the jury that the Commonwealth and Appellant stipulated to the following:  "[T]he Commonwealth has recommended a sentence of 10 to 20 years in Blair County for the first witness in this case[, Hall, for his] continued cooperation into the

---

[6] Hall also admitted that, at the time of the crimes, he was on parole for a prior conviction of third-degree murder, so that he was also facing time for his parole violation.  **See** N.T., 2/17/17, at 55-56, 58-59.

fraudulent prescription practices which he took part in." N.T., 2/22/17, at 17. The jury returned a verdict of guilty on all charges. *See id.* at 60-62.

Appellant was originally sentenced on July 6, 2017, to an aggregate term of 240 to 480 months' imprisonment. However, after obtaining new counsel, and requesting post-sentence relief, the trial court agreed that it had imposed an illegal sentence on one count, and resentenced Appellant on February 13, 2018, to an aggregate term of 235 to 470 months' imprisonment. *See Crawley*, 350 WDA 2018 (unpub. memo. at 6).

Appellant's judgment of sentence was affirmed on direct appeal, and the Pennsylvania Supreme Court denied his petition for allocatur review On February 26, 2019. *See Crawley*, 350 WDA 2018, *appeal denied*, 372 WAL 2018. Appellant filed a timely, first PCRA petition, *pro se*, on March 11, 2019. Counsel was appointed and filed an amended petition on January 16, 2020, raising two allegations concerning the ineffective assistance of trial counsel. *See* Appellant's Amended Post-Conviction Relief Act Petition, 1/16/20, at 8-15. The PCRA court dismissed Appellant's petition without conducting a hearing on March 13, 2020. A panel of this Court affirmed the denial of relief on February 9, 2021, and the Pennsylvania Supreme Court denied Appellant's request for allowance of appeal. *See Commonwealth v. Crawley*, 471 WDA 2020 (unpub. memo.) (Pa. Super. Feb. 9, 2021), *appeal denied*, 57 WAL 2021 (Pa. Dec. 7, 2021).

On January 4, 2022, Appellant filed the present PCRA petition, *pro se*. He raised one claim, arguing that the Commonwealth committed a ***Brady***

- 5 -

violation when it withheld evidence that its witness — Hall — "received a much more lenient sentence tha[n] the one portrayed to [Appellant's] jury." ***See*** Appellant's Petition for Post-Conviction Relief Pursuant to 42 Pa.C.S.A. § 9545, 1/4/22 (*Pro Se* Petition), at 10. In fact, in April of 2017, Hall entered a plea agreement in the fraudulent prescription scheme, and was sentenced to an aggregate term of 7 to 14 years' imprisonment. ***See id.*** at 6; Exhibit G, Hall's 4/20/17, sentencing order. Later, after receiving PCRA relief, Hall's minimum sentence was reduced to a term of four years, eight months, and 26 days to 14 years' imprisonment. ***See id.*** at 6-7; Exhibit H, Hall's 10/22/18, sentencing order. Appellant also pled facts to support the governmental interference and newly discovered facts exceptions to the PCRA's timeliness requirements. ***See id.*** at 5-8, 13; ***see also*** 42 Pa.C.S. §§ 9545(b)(i)-(ii).

The PCRA court appointed Justin Romano, Esquire, to represent Appellant, and Attorney Romano promptly filed a motion requesting a PCRA hearing. ***See*** Appellant's Motion for PCRA Evidentiary Hearing Date, 3/7/22, at 2 (unpaginated). In its response, the Commonwealth agreed that a "short evidentiary hearing" was necessary to resolve Appellant's claim. ***See*** Commonwealth's Answer to Rule to Show Cause, 5/27/22, at 5.

The PCRA court conducted a hearing on August 10, 2023. Thereafter, on October 12, 2022, the court entered an order dismissing Appellant's PCRA petition. This timely appeal follows.[7]

Appellant presents three issues for review:

A. Whether the PCRA court erred when it determined that the Commonwealth, which specifically referenced during its closing argument that Raheem Hall, a material witness, had agreed to a 10 to 20 year sentence in exchange for his cooperation against [Appellant], despite such an agreement never being reached, and the ultimate agreement including a significantly lower sentence, violated [Appellant's] constitutional right to due process?

B. Whether the PCRA court erred when it determined that the Commonwealth had no duty to correct the false presentation to the jury of the fact that Raheem Hall, a material witness, had agreed to a 10 to 20 year sentence in exchange for his cooperation against [Appellant], despite the fact that it knew or should have known that this agreement had not in fact been reached?

C. Whether the PCRA court erred when it determined that the Commonwealth's specific reference during its closing argument to Raheem Hall, a material witness, having agreed to a 10 to 20 year sentence in exchange for his cooperation against [Appellant], despite such an agreement never being reached, and the ultimate agreement including a significantly lower sentence, created substantial prejudice to [Appellant]?

Appellant's Brief at 4-5.

Our review of an order denying PCRA relief is well-established:

[We are] limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. The PCRA court's credibility

---

[7] Appellant complied with the PCRA court's directive to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Small*, 189 A.3d 961, 971 (Pa. 2018) (citations omitted).

Although not addressed by the PCRA court or the parties, the timeliness of a PCRA petition is a jurisdictional prerequisite that we must consider in the first instance. *See Commonwealth v. Whiteman*, 204 A.3d 448, 450 (Pa. Super. 2019). Neither the PCRA court, nor this Court, may "address the merits of the issues raised if the PCRA petition was not timely filed." *Id.*

Every PCRA petition, including a second or subsequent one, must be filed within one year of the date the judgment of sentence is final. *See* 42 Pa.C.S. § 9545(b)(1). Here, Appellant's judgment of sentence was final on May 28, 2019, 90 days after the Pennsylvania Supreme Court denied allowance of appeal, and Appellant did not file a petition for *certiorari* in the United States Supreme Court.[8] *See* 42 Pa.C.S. § 9545(b)(3); U.S. Sup. Ct. R. 13. Thus, the present petition, filed on January 4, 2022, is facially untimely.

Nevertheless, we may consider an untimely petition if a petitioner pleads and proves the applicability of one of the three timeliness exceptions set forth in Section 9545(b) of the Act. *See* 42 Pa.C.S. § 9545(b)(1)(i)-(iii). Moreover, a petition invoking one of the timeliness exceptions must "be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

_____

[8] The 90th day fell on Monday, May 27, 2019, a federal holiday. *See* 1 Pa.C.S. § 1908.

In his *pro se* petition, Appellant pled both the governmental interference and newly discovered facts timeliness exceptions. *See Pro Se* Petition at 13.

> [T]he "governmental interference" exception — set forth in Section 9545(b)(1)(i) of the PCRA — requires a petitioner to establish that "the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States," and the "newly discovered facts" exception — set forth in Section 9545(b)(1)(ii) of the PCRA — requires a petitioner to show that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." . . .

*Commonwealth v. Towles*, 300 A.3d 400, 415 (Pa. 2023), *citing* 42 Pa.C.S. § 9541(b)(1)(i)-(ii). Both of these exceptions have been employed by petitioners to overcome the untimely presentation of a *Brady* claim. *See Towles*, 300 A.3d at 415.

Upon our review, we conclude Appellant established the newly discovered facts timeliness exception. In his *pro se* petition, Appellant detailed when he first learned of the sentence Hall received and the action he took thereafter to confirm that information.[9] *See Pro Se* Petition at 5-7. He stated that his girlfriend informed him of Hall's favorable plea deal in July or

---

[9] We agree the fact Hall was sentenced to a term of imprisonment more favorable than the 10-to-20-year term discussed during Appellant's trial constituted a newly discovered fact. Hall was sentenced **after** Appellant's trial, and there was no reason for Appellant to inquire as to Hall's sentence until his girlfriend learned that Hall received a more favorable plea agreement than Appellant expected. *See Commonwealth v. Small*, 238 A.3d 1267, 1286 (Pa. 2020) (disavowing the public records presumption with regard to claims of newly discovered evidence).

August of 2020, an assertion she verified in an attached affidavit. *See id.* at 5 & Exhibit B, Affidavit of Stephanie Lallement, 9/25/21. At that time, Appellant's appeal from the order denying his first PCRA petition was pending before this Court. Nevertheless, Appellant took several steps to substantiate the information, including submitting a "Right-to-Know Request" in attempt to get copies of Hall's sentencing transcripts, and, when that proved futile, hiring a private investigator. *See Pro Se* Petition at 5-7; Exhibit D, Right to Know Request, 1/28/21; Exhibit F, Private Investigator Invoice, 9/3/21. He further averred that he obtained Hall's sentencing orders in July of 2021, and Hall's PCRA hearing transcripts — which explained the further reduction in his sentence — in September of 2021. *See Pro Se* Petition at 6-7. As noted above, the Pennsylvania Supreme Court denied his petition for allowance of appeal from his **first** PCRA petition on December 7, 2021, and he filed the present petition less than one month later, on January 4, 2022. *See Commonwealth v. Beatty*, 207 A.3d 957, 961 (Pa. Super. 2019) (PCRA court "has no jurisdiction to consider a subsequent PCRA petition while an appeal from the denial of the petitioner's prior PCRA petition in the same case is still pending on appeal"). Thus, because we conclude Appellant has sufficiently demonstrated the applicability of the newly discovered facts exception to the PCRA's timing requirements, we need not consider the governmental interference exception, and we proceed to examine his substantive claims on appeal.

Although Appellant purports to raise three separate issues, they all focus on his claim that the Commonwealth committed a **Brady** violation. Thus, we address them together.

Appellant insists the Commonwealth withheld evidence of Hall's favorable plea agreement which would have had "a direct bearing on . . . Hall's credibility as a Commonwealth witness." Appellant's Brief at 13. Moreover, he argues that the Commonwealth compounded the error by making a "false representation to the jury that [Hall] would receive a 10 to 20 year sentence in exchange for his cooperation[ when] no such agreement was ever reached." **Id.** Appellant also emphasizes that the Commonwealth referred to the alleged 10-to-20-year sentence in an effort to bolster's Hall's credibility. **Id.** at 14-15, *citing* N.T., 2/21/17, at 185 (arguing the 10-to-20-year sentence was not a "great benefit" because Hall "didn't really do anything"). He asserts:

> Had the true nature of the agreement between the Commonwealth and . . . Hall been known by the defense, it would have been used to impeach [Hall] as he was facing a much more severe sentence absent cooperation. . . .

Appellant's Brief at 16.

Appellant further argues the Commonwealth had a "continuing duty to correct [its own] false testimony" even if the "definitive agreement" was not reached until after Appellant's trial. Appellant's Brief at 17. Lastly, Appellant maintains that Hall was a material witness — a fact which the Commonwealth conceded — because his testimony was "essential to the Commonwealth's theory of [Appellant's] role in the criminal enterprise." **Id.** at 18, 20.

*Brady* and its progeny require the Commonwealth to "disclose all favorable evidence that is material to the guilt or punishment of an accused, even in the absence of a specific request by the accused." *Commonwealth v. Bagnall*, 235 A.3d 1075, 1085 (Pa. 2020).

> To demonstrate a *Brady* violation, Appellant must show that: (1) the prosecution concealed evidence; (2) which was either exculpatory evidence or impeachment evidence favorable to him; and (3) he was prejudiced by the concealment. To show prejudice, he must demonstrate a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." A reasonable probability for these purposes is one which "undermines confidence in the outcome of the trial."

*Commonwealth v. Simpson*, 66 A.3d 253, 264 (Pa. 2013) (citations omitted). Moreover, in order to obtain relief based upon undisclosed impeachment evidence, Appellant "must demonstrate that the reliability of the witness may well be determinative of his guilt or innocence." *Id.* at 266 (citations & quotation marks omitted).

Here, the PCRA court concluded Appellant "failed to establish a *Brady* claim." *See* PCRA Ct. Op., 2/10/23, at 4. First, the court found that because no plea agreement with Hall had been finalized at the time of Appellant's trial, "the Commonwealth cannot be faulted for failing to provide it." *Id.* Second, the PCRA court determined Appellant could not demonstrate prejudice. *Id.* The court opined:

> Multiple witnesses testified at Appellant's three-day trial regarding several instances of Appellant engaging in fraudulent transactions regarding prescription drugs. Hall's testimony corroborates and duplicates testimony from other witnesses whose testimony

Appellant does not challenge. In short, Hall's testimony is but a drop in the sea of evidence which led to Appellant's conviction.
. . .

*Id.* at 4-5. Upon our review of the record, the parties' briefs, and the relevant case law, we agree.

First, Appellant failed to establish that the Commonwealth withheld evidence of an agreement it had with Hall in exchange for his cooperation. As noted above, when Appellant's attorney confronted Hall with a letter stating, "the Commonwealth has **recommended** 10 to 20 years" as a reduced sentence based upon his continued cooperation, Hall stated he had "never seen that or heard that" and that his attorney "never told [him] that." N.T., 2/17/17, at 61-62 (emphasis added). The letter Appellant's counsel received from the Commonwealth is attached to Appellant's *pro se* PCRA petition as Exhibit A and utilizes the same language, indicating the Commonwealth merely "**recommended** 10-20 years" for Hall's charges in this scheme. ***See*** *Pro Se* Petition, Exhibit A, Letter from Office of Attorney General, 12/22/16 (emphasis added).

Moreover, Hall's testimony at the PCRA hearing confirms the PCRA court's finding that no definitive agreement had been reached prior to Appellant's trial. In fact, at that time, Hall understood the Commonwealth was **offering** a plea deal of 10 to 20 years' imprisonment, although he and his attorney hoped it would be reduced after his testimony. During his testimony at the PCRA hearing, Hall acknowledged that the deal "started [at] 10 to 20" but was later reduced to "the 7 to 14." N.T. PCRA H'rg, 8/10/22, at

14. When asked "[w]hat changed between [Appellant's] trial and [his] guilty plea hearing[,]" Hall responded that he did not know, but "guess[ed his] lawyer talked" to the Commonwealth. *Id.* Upon questioning by the Commonwealth, Hall confirmed that at the time of Appellant's trial, it was his "legitimate understanding that 10 to 20 was the offer on the table" and there was no other "secret understanding or unspoken agreement with the Commonwealth" that he would receive a reduced sentence. *See id.* at 17. Thus, the record supports the PCRA court's finding that there was no specific plea agreement in place between Hall and the Commonwealth when Hall testified at Appellant's trial. *See Small*, 189 A.3d at 971 (when supported by the record, PCRA court's credibility determinations "are binding on this Court"). Accordingly, Appellant failed to demonstrate the Commonwealth withheld any impeachment evidence. *See Simpson*, 66 A.3d at 264.

We also disagree with Appellant's assertion that the Commonwealth's closing argument consisted of "false testimony" that it had a duty to correct. *See* Appellant's Brief at 17. As noted *supra*, the Commonwealth stated during its closing argument to the jury that "Hall is going to get 10 to 20 years for his case." *See* N.T., 2/21/17, at 185. While we acknowledge that no definitive plea agreement was in place at that time, the Commonwealth's statement accurately reflected the offer on the table. Hall confirmed that, at the time of his testimony, he had not pled guilty to the charges he was facing in Blair County, no promises had been made to him, and that his attorney had not informed him of the 10-to-20-year recommendation prior to trial. *See*

N.T., 2/17/17, at 55, 61-62.  Moreover, the trial court instructed the jury that "the Commonwealth has **recommended** a sentence of 10 to 20 years" in Hall's prescription case.  ***See*** N.T., 2/22/17, at 17 (emphasis added).  The Commonwealth's failure during its closing argument to reiterate that the 10-to-20-year term was a **recommended** sentence, and did not reflect a final agreement, does not constitute a ***Brady*** violation.  Instead, we characterize the Commonwealth's argument as oratorical flair.  Furthermore, the trial court instructed the jury that it "may be guided by the lawyers' arguments to the extent . . . they are supported by the evidence[, but it was] not required to accept the arguments of either lawyer."  ***See id.*** at 11.  Thus, this claim warrants no relief.

Lastly, we agree with the PCRA court's determination that Appellant failed to establish prejudice.  ***See*** PCRA Ct. Op. at 4-5.  Hall testified that he began working as **Andrews'** driver in October 2013, and continued until his arrest in January of 2015.  ***See*** N.T., 2/17/17, at 44.  However, during that time, he only came in contact with Appellant twice — once in August of 2014, and again in December of 2014.  ***See id.*** at 66-67.  Moreover, he testified he never saw Appellant "pass a script" or in possession of any pills.  ***Id.*** at 67.  Although Appellant argues Hall "provided crucial testimony connecting [Appellant] to . . . Andrews[,]" several other witnesses provided the same connection.  ***See*** Appellant's Brief at 18; ***see also*** N.T., 2/21/17, at 46-47, 50-51 (Kristin Berry testified she began "passing fraudulent prescriptions" for Andrews in the fall of 2014 and would travel with him to Pittsburgh where

Andrews met with Appellant to "bring him pills or pick up prescriptions or give him prescriptions"); 82 (Kayla Lantzy, who has a child with Appellant, testified Appellant told her he "bought" his share of the fraudulent prescription business from his cousin, Andrews); 155-56 (Tracy Markin, who has a child with Appellant, testified she was present when Andrews explained to Appellant how to pass fraudulent prescriptions). Therefore, we agree with the ruling of the PCRA court that Appellant has failed to establish the requisite prejudice to support his **Brady** claim. **See Simpson**, 66 A.3d at 264, 266.

Because we conclude the PCRA court's factual findings are supported by the record and its conclusion of law are free of error, we affirm the order denying relief. **See Small**, 189 A.3d at 971.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/22/2023